May it please the Court, I represent Keith Gunther. I respectfully request three minutes of rebuttal time. You may. Mr. Gunther requests that the decision of the District Court be overruled because he successfully stated civil rights claims under 1983. Gunther demonstrated that prison officials were deliberately indifferent to his medical needs, specifically his fierce spinal condition for six months, and that was a cyst growing on one of his couple of his vertebrae and scar tissue pushing on his nerves in his spine. Of course, you couldn't tell that just by looking at him, could you? No, you couldn't, Your Honor. That's true. But you could tell a man couldn't walk. This is a pro se complaint, is it not? It is indeed, Your Honor. Does he specifically allege that every time he went to see the doctor he was in a wheelchair and couldn't walk? No, he doesn't, Your Honor. But he does say there were periods of time when he was unable to get out of his bed. Did the doctor ever observe that? I don't know, Your Honor. I don't know if he did or not. But as much as Mr. Gunther complained about him, I know he must have mentioned he was unable to walk at different points of time. I'm sorry, you say you know he must have said that? I cannot cite to a page in the record, Your Honor. That's true. But if a man can't walk, it's obvious that he can't. I don't know what the day entails in this prison. But if an inmate can't even get out of his bed, somebody is bound to notice and report that he's unable to walk. And like you said, this is a pro se inmate. So when he says that he can't walk because of his disability, then sometimes he can. But we're not saying he was never treated, Your Honor. We're saying he was never, he wasn't treated for six months. There's complete deprivation of care for this injury. Was he given aspirin or ibuprofen? He was given some Advil, Your Honor. That's true. But as the opposing counsel cites, I think it's the Alice Paul, I hope that's the right pronunciation, versus McConnell from this court, courts can second guess medical treatment or the treatment is so woefully inadequate it amounts to no treatment at all. And Advil for something like that is effectively no treatment at all. Now, maybe I got confused here. I thought there was a point at which he was given Flexeril, Ultrium, and Uratonin. That's true, Your Honor. That was after the six month period. Okay. And that, if you can turn to page 157, you can see that that cocktail was described as something for pain. But so in effect, he got something for pain to start with. It wasn't good enough. And he was later given, I take it, more powerful pain medication. Without being a physician or pharmacist, I presume so. I do know Advil's not good enough for a headache at times. And so if that's all he was given for six months, it's essentially no care at all. And Mr. Gunther alleges that he was never treated for his severe psychological condition, which is paranoid schizophrenia. He was never treated for that. And a prison guard used excessive force to inflict unnecessary pain on Gunther. And all these acts are in violation of 8th Amendment. With regard to the paranoid schizophrenia, what is the allegation as to his communication of that and as to exactly who he communicated it to? Your Honor, it is a bit unclear from the record. He did tell the medical staffs at both prisons he was in that he had suffered from this condition and needed treatment for it. He does allege he was never treated for it, given any medicine for it. Okay, wait a minute. He says the medical staffs of two separate institutions? Yes, the Lorraine prison and the Marion prison. The only individual he named specifically is a Dr. Ojibwe, I think that's the correct pronunciation. And which one is he at? I believe he is at the Lorraine prison. Okay. And he says he told him, I've paranoid schizophrenia. Maybe not that directly, but he does say that I told the medical staff, Dr. Ojibwe, I had paranoid schizophrenia and I needed treatment for this. He doesn't give any indication of when or how? No, Your Honor. All he says is that he has been treated for this since 2002. And at least as the day of his objections to the magistrate judge's report, he'd still not been treated for it. The treatment that he had been receiving, was that in yet earlier prisons or was that on the outside? I believe it was on the outside, Your Honor. Just like the treatment he was receiving for his spinal condition. And then with respect to the guard, there seems to be some discrepancy in the statements in the two briefs about whether he forced his broken arm behind his back or he tried to force his broken arm behind his back. Do you have a view of what the record shows on that? Well, either way, force was used on his broken arm, Your Honor. Mr. Gunther does say in all of his pleadings that it was attempted. Now, you can say that, well, it was just an attempt, there was no force actually used. But the reason why it was merely an attempt is because he had his arm brace on. And that prevented it because he had a broken arm. Was there any harm here from that? He did not suffer a severe injury, but he did suffer pain, Your Honor. And that's what the focus is with the objective component of the 8th Amendment analysis, is the pain. Did he suffer that? And then after he suffered this pain, he went to receive treatment for it. And the nurse told him, well, it's a very good thing that you had your brace on because you would have suffered a severe injury without it. Of course, the only reason the deputy presumably was touching his arm was because, what, he was holding his pants and wasn't very prompt in getting dressed, or he was being transferred, was he not? He was being transferred to another prison, and he grabbed his arm because a client asked to see his supervisor. That's it. Mr. Gunther is virtually naked in a room alone with this officer, and the officer begins acting unprofessionally, getting up in his face. Correct me if I'm wrong, I thought the officer wanted to get the pants away from him, properly or not, but apparently he felt that he wasn't entitled to keep the pants at that point. He did take the pants away from him, and the record shows the pants were underneath my client's arm. And if you want the pants, you've got a virtually naked man standing in front of you with a broken arm and a brace, just grab the pants. But he decides he's going to grab this man's broken arm. Okay, so getting the pants is not the violation, as he didn't grab the pants, he grabbed the arm. He grabbed the arm, yes, your honor. And that inflicted a severe amount of pain on Mr. Gunther. And there is no reason for this. I mean, the fundamental question for the subjective component here is not whether the force was de minimis, but whether the amount of force used by the officer was excessive in light of the inmate's condom. And all the inmate did was stand there, I think in his boxer shorts, and asked to see his supervisor. And in the response to that, the officer grabs his broken arm and tries to pull it behind his back. Now, they can say de minimis force, but they can't argue that because there's no evidence in the record that the force was de minimis. They say in the brief, well, it was only for a brief period of time, and he did it because he wouldn't follow instructions and all that kinds of stuff. But your honors, only facts in the brief. He was standing there, virtually naked. He asked to see the officer's supervisor, and he grabs his broken arm and tries to pull it behind his back. So there's no evidence in the record to say this was de minimis, and no amount of force on a broken arm could be considered de minimis. Was your client awaiting transfer to another jail or awaiting transfer to a medical facility? Your honor, I'm not sure on that. I think it was a medical facility. I'll take your word for it, your honor. I'll just refer to the record and what we've written in the briefs. The amount of force Luke Hall used on Gunther was excessive in light of his conduct, as I've mentioned. He behaved unprofessionally, just because Gunther asked to see his supervisor. And this was no small push or shove that was mentioned in Wilkins v. Gaddy. Luke Hall used excessive force on Gunther's broken arm in response to his request for full knowledge of his medical condition. Everybody in the prison knew Gunther had broken his arm. And here he is standing. The brace is not covered up by anything because the man is virtually naked. And he sees his brace on there. He could have grabbed the uninjured arm or done nothing at all. All he wanted to do was see his supervisor because Gunther thought the prisoner was acting unprofessionally. He could have got his boss, and that would have been that. But he decided that he was going to inflict unnecessary force. And these actions show it was not taken in good faith. There was no prison unrest. Gunther couldn't have fought him because he had a broken arm. It's the proverbial, you know, one arm tied behind your back, so to speak. He couldn't have fought him. Not taken in good faith and is only motivated by malicious purposes of causing harm because in the record it says that his bosses were telling him to make sure he complies with you. And so he's getting up in his face and says, you're going to do what I say. And I know your honors wouldn't allow for that. Somebody getting up in your face like that. And Mr. Gunther wouldn't deny it either. So he thought it was unprofessional and asked to see his supervisor. And the guard decided, well, I'm going to inflict some pain on you. There's no record, there's nothing in the record of any prison unrest or conflict which would give Luke Hall a little deference under Whitley. The record merely reflects that force was used against a naked inmate with a broken arm when he asked to see a prison guard supervisor. Furthermore, the record does not reflect evidence that Gunther disobeyed a rule or a prison policy designed to preserve formal discipline and maintain institutional security. Accordingly, appellees cannot assert no force would have been used if Gunther had simply complied with prison procedure or the guard's orders. Counsel, I have a question here. There seems to be some, this incident with Luke Hall, when I looked at the record there seemed to be some question about it, whether it happened March 6th or March 7th. The judge's, Judge Economist's final dismissal, final decision, all he says on page 6 is, with respect to the March 7th incident, plaintiff does not allege pain or injury resulting from standing in the cold. As I read it, Judge Economist doesn't say anything about the arm twisting. Is that a fair reading of it? Your Honor, without having a photographic memory of the district court's opinion, I will take your word for it. He does not really address what Luke Hall did. I believe you're right now that I'm thinking it through my mind. He mentions on page 3, he's going through the allegations, and he says he stuck his finger in his face and he grabbed his injured arm and tried to force it behind his back. But at least as I read it, he doesn't make a response to that allegation. That's why I'm focusing on it. Whereas the magistrate judge just says, the claims pleaded against corrections officers in gross do not allege brutality intentionally causing physical injury. Most involved using language he found offensive. But again, the magistrate judge didn't seem to directly address the arm twisting incident. You're correct, Judge Butler. I believe it was an oversight by the court. Mr. Gunther wrote voluminous pages of what was going on in the prison. He complained about a lot of things. He complained about how he was treated, how he was spoken to. One thing he for sure spoke about was this incident with Officer Luke Hall and the pain it inflicted upon him, and the fact that the nurse told him he was lucky to have his brace on, otherwise his arm wouldn't have been hurt even more. He goes to the extent, my time is getting run out, if I can just finish my statement for you, Judge. He goes to a great extent of talking about how his arm was broken and the circumstances about that. So this was a significant thing. A very significant thing, his broken arm. The court talks about the officer getting in his face, but he neglects it. Thank you. You'll have your three minutes for rebuttal. May it please the court, my name is Chris Baggi. I represent the Ohio Department of Rehabilitation and Corrections employees and staff. They're the appellees in this case, and we respect the request that this court affirm the lower court's order dismissing Keith Gunther's complaint. As this court has made note and appellant has stated, inmate Gunther makes numerous allegations in his complaint. It chronicles roughly a two-year span, and he discusses the many, what he alleges, maladies that befell him while he was in prison. What he doesn't allege in that complaint is what doctors and under what circumstances denied him mental health treatment and the circumstances under which showing any of the doctors at either of the institutions were deliberately indifferent to his spinal injury. As a result, his complaint, even construed on behalf, liberally for a pro se pleader, was insufficient to state plausible claims for relief. Therefore, the district court was correct to dismiss these allegations. Tell us why. He tells the doctor when he first gets there that he has a spinal condition that's serious and causing him pain, and all he gets for six months is Advil. Why is that not deliberate indifference? Deliberate indifference requires showing mere allegations of inadequacy of care insufficient. This circuit time, again, has stated that a review in court is not going to take the position of a medical review board to determine the adequacy of care. If he receives some treatment, then the allegations are insufficient. In this case, he received ibuprofen. He complained that the pain was too severe. It was initially a 600-milligram dose. He comes back to the institution medical staff and says the pain is too severe, I need something else, and they then increase it to 800 milligrams during that six-month period. At some point, he comes up with the idea to contact his prior care provider for his spinal injury, is able to get a letter or some records to show the institution, and once they're actually made aware of the severity of his spinal injury, they immediately refer him out to a neurologist. He's given an MRI. He also receives what he calls an electronic or electric pulse test, and the determination is made that his L4 and L5 vertebrae are injured, and they prescribe him Ultram Flexeril. His complaint is not after they get the private doctor's medical records. The first six months, when they just give him Advil, despite his complaints and constant visits, and saying, sometimes I can't even walk. Why is the doctor not obligated, why is it not deliberately indifferent not to do something more than just keep giving him Advil? The problem with the complaint is that there's no allegations of what the doctors actually knew at the time that they allegedly denied him these additional treatments. According to the allegation, they knew what he told them, that I have a bad spinal injury. He did tell them that, and when they were confronted with that, they made the determination that the amount of treatment necessary was 600 milligrams of ibuprofen, and then they increased that. The facts as pleaded show that when they were actually aware, when they were made aware of the severity of his spinal injury, they immediately referred him to additional specialists for diagnostics. He received additional tests. Well, is there any case law that says you don't have to take, say, the plaintiff's word for what his condition is? I mean, is it never deliberately indifferent that you can say, oh, I know he says he's got this condition or that condition, but we don't have to believe him? Well, I think that part of the case law that's out on deliberate indifference is that an inmate, when they come in, a doctor makes their own assessment, but an inmate's word doesn't have to be taken at face value under every single circumstance. They evaluated him, he said he had a preexisting condition, and they made the medical determination that 600 milligrams of ibuprofen was sufficient. When he continued to return to them complaining about pain from the injury, they increased the dosage to 800 milligrams, and then when the facts as pleaded show that they were actually made aware of the severity, they immediately referred him. So the plausible explanation, the plausible inferences to be drawn from this under an Iqbal review is that there wasn't deliberate indifference here. What about his complaint about that he told the doctor that he had a mental illness, too, yet nothing was done about that? Well, what's of note is that he was able to provide. He says he was previously diagnosed with a spinal injury. He eventually provides a letter and records to the institution showing the spinal treatment that he'd received, the severity of it. He says that he was previously diagnosed with a mental health issue, but he never provides them with mental health records. In his complaint and his objections to his R&R, he states that he was previously diagnosed in a correctional institution at Richland Correctional, but there's nothing in his medical records. He says that the doctors reviewed his records and they've apparently lost them, misconstrued them, that they have been improperly abandoned for whatever reason, but the doctors reviewed his medical files, saw no prior diagnosis or treatment for mental health needs and made the determination that he wasn't. Let me go over that again because when I asked your adversary about when was this previous diagnosis, he thought it was on the outside. Are you saying that the only previous diagnosis was at Richland? Your Honor, I think what's in the complaint is what's before this court. He doesn't state with any level of specificity when exactly he was diagnosed and when he received treatment. It's just during a period of time from 2000 to 2008, but if you construe the facts as alleged in his objections to the R&R, he does state that in Richland Correctional he was diagnosed with paranoid schizophrenia and once he was released and placed on parole, at that point he was receiving treatment. He says that in the R&R as a statement of historical fact. What does he say about what he told any particular doctor? There is no allegation that any doctor was made aware of that fact, and actually what's alleged is that he tells them, I had prior mental health diagnosis and I received treatment in the past. Does he say only mental health or does he specifically say I had or have paranoid schizophrenia? What he alleges in the complaint is I have told them I have mental issues. He calls it what I think his language is paranoid schizo. Even a prior diagnosis from an outside physician, though, doesn't mean that every doctor thereafter in a correctional institution is mandated to come to that same medical conclusion and provide the same treatment. That's why this allegation fails to state a plausible claim for relief because he hasn't alleged sufficient facts in his complaint, even considering those additional things in his objections to the R&R, to establish that the doctors were made aware of an excessive risk of safety or possible risk to the inmates. They actually drew the inference that their denial of treatment would lead to an excessive risk to that inmate. Let me ask you about, the magistrate judge calls him Dr. Ojugwe. Judge Economist calls him Ojugwe. Do we know which is right? I don't know with any clarity what's right. Whoever the doctor is,  One of them says he had an intake appointment in early 2011 at which he complained about the spinal problems. There's another reference that in early 2009, the same doctor continued him on ultra-flexeril and Neurotonin. What do we know about, what do you think is right about when did he actually see this particular doctor? I think that that's a clerical error on behalf of the district court's opinion. His initial assessment was in February of 2008, according to the complaint. I'm going to construe those as the operative facts as what he's alleged. He was evaluated in February of 2008. So that doctor saw him in 2008 and again in 2009 at a minimum, as well as perhaps in between. And the allegation is that that doctor was the one that was made aware  And the six-month period that people are talking about is between early 2008 and later on in 2008? Yes, the allegation is that in August of 2008, he was able to gather the medical records or a letter from his provider. All right, let's talk about Leucl then for a minute. Because you heard me when I went through your adversary. It seems to me, and help me if I'm wrong, that really neither the magistrate judge nor the district judge really addressed. You've given some reasons why his complaint isn't good enough, but neither the district judge nor the magistrate judge did in terms of addressing his allegation that he, at a minimum, grabbed his broken arm for no good reason. I think part of the reason is because in his complaint, when he initially discusses the incident with Corrections Officer Leucl, he never makes any mention of the arm being bent behind his back. All he says is that he grabbed me by the arm, and he alleged that he put his fingers in his face. Several pages later in his complaint, it's like a running diary, a handwritten diary, he says, Oh, I forgot to mention he also tried to bend it behind my back. Oh, but that's in the same document. Correct, but what I point is I think that's why the district judge... Even tried to bend it behind your back when you have a broken arm, if there's no penological reason for it, would seem to be an adequate complaint, wouldn't it? I would disagree. When you construe the facts as pleaded in the complaint, there was clearly a legitimate, good-faith reason for the use of force. A Corrections Officer is trying to get the inmate dressed out, transported to another medical facility so that he can be provided with additional medical treatment. The main thrust of his three-year complaint is, I'm being denied with medical treatment. Corrections Officer Leucl is trying to expeditiously get him to that transport. And when he's faced with an inmate that's recalcitrant, that's refusing an order, whether expressly stated, put your clothes on the floor, or implicitly by the procedure that the inmate was clearly aware of. He'd been transported off the facility several times. Okay, so the procedure was he was okay to have the pants with you, but you're supposed to put them on the floor, is that... No, the facts as described is he got... Once Corrections Officer Leucl grabbed him by the arm, was able to get the pants away, he threw them on the ground. But what I mean is, what was wrong with his having the pants? Well, the transport procedure, he calls this a shakedown cell. What a shakedown cell is, is you do a contraband check. You either strip search the inmate, you get the clothes changed out to make a transport, and the natural inferences from what's being described in the complaint is that's what was transpired. Okay, but he's here in boxers. You would think at some point he wants to have pants. So either he's entitled to have them, you just got to do something with them, or else he's going to get pants later on. Yeah, he's going to be... Is there any discussion of how that happened? It's not clear from the complaint, but what's described is he's being changed out for clothing. Appellant's brief says that he was being dressed out for transport. I think that that's the correct description, is he was being asked to change his clothing so that they could make sure that no contraband... I understand what he's complaining about is that Officer Leukel got just frustrated that he wasn't dropping his pants that were crooked in the broken arm quick enough for Leukel, and that's when he says, Leukel, I want to speak to your supervisor,  isn't that what he alleges? I don't... Well, what he alleges is that he was faced with an officer that was trying to... It's clear from the inferences and what the facts allege that the officer was trying to get the pants away from him. So the plausible, good-faith reason for exercising force on the inmate was to effectuate compliance with his order to get the pants away from him. After he was able to get the pants away, no other force was used. He was never hit, punched, assaulted. He only grabbed his arm long enough to get the article of clothing away, and once he did, there was no more force used. So the plausible inferences to be drawn from this is that that was the good-faith phenological reason. This circuit time and again has held that an officer, when faced with an inmate that is refusing an order, whether implicitly, expressly, or otherwise, when they're faced with an order and they're refusing that, a corrections officer does not have to adopt a wait-and-see approach. If a corrections officer is faced with someone that's denying or refusing to comply with an order, he's justified to use force, and that's why the subjective element of an excessive use of force claim requires a determination of whether or not the force was used for a plausible good-faith reason. The facts as pleaded show that there was clearly a plausible good-faith reason. As to the objective prong for this cause of action, the corrections officer only used a de minimis force. Merely because the inmate had a pre-existing injury doesn't give him a license to have no force used against him or to refuse an order. He was faced with a corrections officer, implicitly or otherwise, that the procedure was to remove your clothing and get transported out and dressed out to go to a medical facility. When he stopped complying with that order, the reason that they're going through that procedure is to ascertain whether or not they have any contraband to get them transported out. So a corrections officer faced with an inmate saying, I want to speak to your supervisor, is basically being asked, leave me alone with the contraband check that you want me to go through so I can get rid of the evidence. There's a reason that he used his force in that instance. Clearly we're at the dismissal for failure to plead stage. Both sides are putting a little bit of spin on it, but tell me why there is anything that says that he couldn't just grab the pants. He's either got them under his arm or on top of his arm, right? Isn't that his statement? Correct, Your Honor. It's not like he's hiding stuff in his crotch. I mean, that's what you usually get in these kinds of cases. The determinative issue in an excessive use of force case, especially when considering the Supreme Court's precedent with Whitley v. Albers, was there a plausible good faith reason for the officer to use that amount of force? And there was a plausible good faith reason. There's no subjective look into the officer's eyes and see what he really thought. Is that at the pleading stage? In other words, when he pleads that he did it because he was getting rank and losing it all, as opposed to he did it because that was the only way to get the pants. I mean, he's pled the one thing, and it seems that it sounds more like a triable issue, or at least you get to summary judgment later on about the plausible good faith reason, because you have nothing from the officer. We're not at the stage where the officer provides an affidavit or a deposition saying the only way I could get the pants was to grab his arm. Well, the facts as pleaded show that there was a plausible good faith basis for him to use that force, and the case law is clear that in an attempt to push someone into a closed door, for example, or almost break someone's glasses, that amount of force has been held de minimis. He tried to put his arm behind his back. This isn't a did he have to use that force or wasn't the most reasonable thing. The standard is was it used for a good faith plausible basis, and it was. Thank you. Just one question. What about the grievances and exhibits attached to the complaint? In deciding if the complaint was deficient, isn't he entitled to have those exhibits considered? I believe that that is properly before the district court, and I think given the review by Judge Economist, he says that these are the facts as pleaded in the complaint and in the objections to the R&R. I don't think that he actually specifically ever references any of the grievances, but the things that are stated in the grievances, even considered, I don't think state pushed this past the plausibility standard of a fall or a twombly. Okay, but it's not altogether clear that the district court considered those exhibits in assessing the sufficiency of the complaint. It's not clear, and even for a pro se party, I think it was incumbent upon inmate Gunther at that point to say, Well, here's what you've said is wrong in my objections. I put some ICRs in front of the court for which you'd consider he didn't raise that. And that fact also hasn't been raised by appellants in their briefings, so I think that's been waived. Thank you. Thank you, counsel. You have three minutes for rebuttal. Judge Boggs, you point out correctly so that we are at the pleading stage here, and like in their brief, opposing counsel keeps putting facts and evidence that aren't there. We're limited to what Gunther has said, and that's the complaint as well as the objections to the report and recommendation. The court can consider that just like the district court did. As I point out in my 28J letter, their authority for telling you you can't look at it has been overruled by another panel. And also, Your Honor, Judge Boggs, you were asking, Well, what do I do about the lack of discussion in the magistrate judge's opinion as well as the district court. This court sits in de novo review. You can look at the record up and down and consider things that the other courts didn't, and we're asking you to do that. In terms of the medical injuries, there was complete deprivation here, total deprivation of care. And so that is clearly an Eighth Amendment violation. And like I had mentioned before, in terms of the excessive force claim, he keeps talking about procedures and orders and things of that nature, but none of that is in the record, not a bit of it. All we have is what Gunther said. When Gunther says, I'm standing there, this guy's unprofessional, asks to see his supervisor, and then he starts grabbing my broken arm. And as far as his back goes, he was denied care for six months. You can find out all the facts about that in both the complaint as well as the report and the objections to the report and recommendation. As well as the mental illness, he told Dr. Objabwe, he is the only physician named in this individual. The rest of it is medical stuff. And opposing counsel talks about how, well, he got the records and they started treating him. This man is in prison. He cannot go down the street to the doctor. It should not be incumbent on him to have to prove that he is sick before getting treatment. As we saw when he went to Marion, he told them he had a bad condition. They started treating him right away. They sent him to the neurologist. He got an MRI. At Lorraine, nothing. Now, he did come to the medical center a lot, and they probably got annoyed with him. But that doesn't mean you just ignore an inmate who has no other option than to come to you and says, I've got a medical condition, and then say, oh, prove it to me before I even look at you. That's not permissible under the Eighth Amendment. And I thank you, Your Honor, for your time. Thank you, counsel. The case will be submitted. Call the witness case.